# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## EASTERN DIVISION

CHARLES ORLANDO FIELDS a/k/a )
Noble:buddha-angavu:sishya, )
                            )
       Plaintiff, )
                            )
VS. )        No. 17-1190-JDT-cgc
                            )
TRINITY FOOD SERVICE, ET AL., )
                            )
       Defendants. )

---

## ORDER DENYING MOTION TO FURTHER AMEND COMPLAINT (ECF No. 34), PARTIALLY DISMISSING COMPLAINT AND FIRST SUPPLEMENTAL COMPLAINT, AND DIRECTING THAT PROCESS BE ISSUED AND SERVED ON DEFENDANTS PERRY, MATHEWS AND DIETZ

---

On October 4, 2017, a civil complaint was filed jointly by four *pro se* prisoner Plaintiffs. (ECF No. 1.) At the time, all four were incarcerated at the Hardeman County Correctional Facility (HCCF) in Whiteville, Tennessee. The complaint concerns events that allegedly took place at the HCCF and at the Trousdale Turner Correctional Center (TTCC) in Hartsville, Tennessee.[1] When it appeared that no Plaintiff had complied with the Court's order to either pay the filing fee or file the necessary forms to proceed *in forma pauperis*, the Court dismissed the action and entered judgment. (ECF Nos. 17 & 18.) Plaintiff Charles Orlando Fields a/k/a Noble:buddha-angavu:sishya, who is currently incarcerated at the Whiteville Correctional Facility (WCF) in

---

[1] The TTCC is located in Trousdale County, which is part of the Nashville Division of the Middle District of Tennessee. 28 U.S.C. § 123(b)(1). Because all of Fields's claims concerning the TTCC and its employees are subject to dismissal for failure to state a claim, the Court declines to sever and transfer those claims for improper venue.

Whiteville, Tennessee, then moved to alter or amend the judgment because, as he notified the Court, he had filed an *in forma pauperis* affidavit. (ECF No. 22.) The Court granted Fields's motion, granted leave to proceed *in forma pauperis*, and amended its previous assessment of the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 32.) Fields is the sole remaining Plaintiff in this action.[2] The Clerk is DIRECTED to terminate the other Plaintiffs from this action.

Fields has filed several motions and notices, (ECF Nos. 3, 4, 7, 8, 9, 10, 11, 14, 15, 16, 21, 24, 33 & 36), and a supplemental complaint, (ECF No. 11). Because the first supplemental complaint seeks to add claims related to those in his original complaint, the Court will consider it along with the initial complaint. *See* Fed. R. Civ. P. 15(d).

On June 6, 2019, Fields filed a "Motion for Leave to Amend to file a Supplemental Complaint." (ECF No. 34.) The proposed pleading consists of a 65-page complaint, which itself contains, *inter alia*, numerous confusing and unnecessary documents, motions, and declarations. Fields also seeks to add numerous Defendants, most of whom work at the South Central Correctional Facility (SCCF),[3] and new claims against some existing Defendants. (*Id.* at PageID 425-426.) However, those claims are not properly joined in this action because they are completely unrelated to the claims in Fields's original complaint and seek relief against entirely unrelated Defendants. *See* Fed. R. Civ. P. 20; *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Fields has been allowed to file one supplemental complaint in this matter. The Court will not parse Fields's second supplemental pleading to determine which additional claims belong in this action

---

[2] As the Court noted in its previous order, the Ultimate Cakra Liberation appears to be an entity Fields uses as another designation for himself. (ECF No. 32 at PageID 387 n.1.)

[3] Fields was housed at the SCCF for a period of time between his incarceration at the HCCF and his current confinement at the WCF. (*See* ECF No. 31.)

and which belong elsewhere. If he wishes to sue the SCCF Defendants, he must bring his claims against those Defendants in a new action filed in the appropriate district. *See* 28 U.S.C. § 123(b)(3). Fields's motion to further supplement the complaint is therefore DENIED.

The Clerk shall record the Defendants as Trinity Food Service; the Tennessee Department of Correction (TDOC); the TTCC; CoreCivic (formerly known as Corrections Corporation of America);[4] the HCCF; TDOC Commissioner Tony Parker; TDOC Assistant Commissioner Jason Woodall; Bobby Last Name Unknown; Deborah Thompson, TDOC Religious Director; Jason Medlin, Regional Director; Joseph Russell, CoreCivic President; John Ferguson, CoreCivic Vice President; Christopher Brun, TTCC Contract Monitor; former TTCC Warden Blair Leibach; Tina England, TTCC Secretary; Jessica J. Garner, TTCC Grievance Chairperson; Connie Brinson, TTCC Sergeant; Jay Schwitzer, TTCC Health Administrator; Joanna Veal, TTCC Chief; former HCCF Warden Grady Perry; HCCF Assistant Warden Charlotte Burns; John Borden, HCCF Health Administrator; Bernard Dietz, a physician at HCCF; Shirley Robertson, HCCF Sergeant; Darlene Mathews, HCCF Library Supervisor; Rebecca Wilson, HCCF Grievance Chairperson; Latriva Lanier, HCCF Unit Manager; Elizabeth Ricketts; Marva Wills; Kizzy Woods, HCCF Job Coordinator; First Name Unknown (FNU) Siggers, HCCF Case Manager; Tomicka McKinnie, HCCF Protective Custody Unit Manager; FNU Williams, HCCF Case Manager; M.T., HCCF Grievance Chairperson; Kenyuda Daye; FNU Patterson; T. Anthony, HCCF Sergeant; FNU Crowder; FNU Gore, HCCF Chaplain; FNU Jones, HCCF Protective Custody Unit Manager; and

---

[4] CoreCivic is a private corrections firm which manages both the Hardeman County Correctional Facility and the Trousdale Turner Correctional Facility. *See* https://www.tn.gov/correction/sp/state-prison-list/hardeman-county-correctional-facility.html; *see also* https://www.tn.gov/correction/sp/ state-prison-list/trousdale-turner-correctional-center.html.

Betty Hill, HCCF Case Manager. Fields sues the Defendants in their individual and official capacities.

Fields's original pleading consists of a 42-page complaint, which contains various filings; five pages of various writs purportedly brought under 42 U.S.C. § 1983; a 1-page declaration from Fields's mother; and numerous exhibits. His supplement consists of a 10-page complaint and nine additional exhibits. Both documents are disjointed, difficult to follow, and at times incoherent. Fields alleges that he was "kidnapped from N.E.C.X. [the Northeast Correctional Complex] and restrained at T.T.C.C. in the form of human trafficing [sic] for retalitory perpurses [sic]." (ECF No. 1 at PageID 10.) At various points, he alleges that "a grievance was filed" for alleged violations of various rights that were denied at all levels of appeals. (*Id.* at PageID 10-11, 13, 15.) Fields alleges he was placed in segregation for 168 hours without proper hygiene items and released only after his mother called TDOC headquarters. (*Id.* at PageID 11.)

Fields alleges that Defendant Brinson seized and held his property from "SWEETWATER" for over two months. (*Id.*) Fields apparently had ordered unspecified electronic items from this company that were delivered to TTCC in two shipments. (*Id.*) Defendants Liebach and Garner allegedly approved the items, but an internal affairs officer at TTCC refused Fields the items. (*Id.* at PageID 11-12.) Fields alleges that the officer later disclaimed having any knowledge of the packages or talking with Garner about them. (*Id.* at PageID 12.) Fields alleges that the "T.T.C.C; [sic] Agents have maliciously, arbitrarily, and capricious acts [sic] against me with an absolute blatant disregard for clearly established law." (*Id.*) Fields alleges that the property later arrived at TTCC, but Defendant Burns told Fields he was not allowed to have it because it was not from an approved vendor. (*Id.* at PageID 13.) He

asserts Defendant Garner violated TDOC policy in her handling of the electronic items. (*Id.* at PageID 12.)

Fields alleges that he requested a raw fruit and vegetable diet, yoga mats and accessories, vitamins, minerals, and other nutritional supplements in accordance with his religious principles.[5] (*Id.* at PageID 13-14.) He alleges that his request was sent to Defendant Gore, who told Fields he had approved Fields's request, but "still to this date nothing has been done." (*Id.* at PageID 13, 15.) Fields alleges he still is served root vegetables, which "are forbidden to be eaten," and beans, to which he is allergic. (*Id.* at PageID 16.) In his supplemental complaint, Fields alleges that he gave Defendant Perry a grievance requesting an "adequate nutritious religious meal" in accordance with Jainism. (ECF No. 11 at PageID 216.) Perry allegedly responded that "he does not go by TDOC policies he goes by his own." (*Id.*) Fields alleges that Perry has "implement[ed] regulation [sic] to infringe on [Fields's] religious practice" of Jainism. (*Id.* at PageID 217.) According to Fields, without this diet he is at risk for protein, amino acid, and B-12 deficiencies; severe forms of malnutrition such as marasmus, kwashiorkor, and cachexia; beriberi; rickets; skin ulcers; edema; and anemia. (ECF No. 1 at PageID 22.) Fields further alleges that the "Party defendants" have denied him "a place to practice, worship, and study the religion of Jainism." (*Id.* at PageID 22.)

Fields also alleges that Defendant Dietz refused to respond to his sick-call requests, refused to order Fields "a therapeutic diet," and discontinued a planned hernia surgery. (*Id.* at PageID 14-15.) He alleges that he is in severe pain from the hernia that, if not surgically corrected, "may rupture and cause poisoning or death." (*Id.* at PageID 22.)

---

[5] Fields alleges he follow principles of Jainism, under which "we do not eat meat, animal-by products, anyth[i]ng with a pulse." (ECF No. 11 at PageID 217.)

Fields alleges that Defendant Siggers denied him copies of unspecified legal papers. (*Id.* at PageID 15, 17.) In another instance, Fields alleges that Defendant Mathews denied him copies of legal documents from a pending case in the Davidson County Chancery Court. (*Id.* at PageID 17.) He alleges that the court ordered Fields to provide copies of the summons in duplicate form and the complaint for each Defendant in his case. (*Id.*) Fields requested these copies through Mathews and provided the unit manager a copy of the court's order. (*Id.*) Mathews allegedly refused to make the copies for Fields, and Fields missed the court's deadline to submit them. (*Id.*) The court then dismissed Fields's complaint for failing to comply with court orders. (*Id.*) Fields alleges that he is at risk of missing another deadline in his "out-of-state cases" because of Mathews's actions. (*Id.* at PageID 22.)

The complaint also contains numerous scattershot allegations against various Defendants alleged without elaboration or context: He alleges that on one occasion Defendant Williams would not allow him to call his attorney. (*Id.* at PageID 20.) Fields further alleges he has been punished for refusing to sign different documents or respond to documents addressed to "the 'NAME' of the trust," which he insists "is not me."[6] (*Id.* at PageID 14, 18-19.) He alleges Defendants M.T. and Patterson refused to call witnesses or cross-examine witnesses at his request during a disciplinary hearing. (*Id.* at PageID 27.)

Fields generally states that prison officials have been "put on notice about the extent and nature" of actions "committed by their subordinates" but are not acting to correct the alleged misconduct. (*Id.* at PageID 20.) Fields cites federal statutes and provisions of law under which

---

[6] Fields alleges that he is the "suo loco . . . a divine being incarnated in blood flesh of the above ESTATE of law," and that he is not the "artificial fictional person ORLANDO CHARLES FIELDS, ESTATE, created July 17, 1972." (ECF No. 1 at PageID 23-24.) Fields also takes issue with the all-caps formatting of his name, asserting that pleadings with such styling are addressed "to a fictional 'strawman.'" (*Id.* at PageID 21.)

he seeks to charge the Defendants with various crimes and misdeeds.  (*Id.* at PageID 25.)  He asserts clams under the Religious Land Use and Institutionalized Persons Act (RLUIPA), 42 U.S.C. § 2000cc, *et seq*, (*id.* at PageID 26), the Tennessee Constitution, (*id.* at PageID 27), and various constitutional provisions, (*id.* at PageID 26-27).

In his supplemental complaint, Fields alleges Defendant Hill told him that he was being transferred to the compound for refusing to sign protective custody forms with his given name.[7] (ECF No. 11 at PageID 217.)  Fields insisted that being transferred to the compound would put his life in imminent danger.  (*Id.*)  He asserts that Hill retaliated against him for not signing the forms by moving him to the compound.  (*Id.* at PageID 219.)

Fields seeks declaratory and injunctive relief.  (ECF No. 1 at PageID 30; ECF No. 11 at PageID 222.)  He also seeks compensatory, punitive, and "speculative" damages.  (ECF No. 1 at PageID 31; ECF No. 11 at PageID 222-223.)

The Court is required to screen prisoner complaints and to dismiss any complaint, or any portion thereof, if the complaint—

> (1)      is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
>
> (2)      seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint in this case states a claim on which relief may be granted, the standards under Fed. R. Civ. P. 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677-79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-57 (2007), are applied. *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010).  The Court accepts the complaint's "well-

---

[7] Fields alleges that he explained to Hill, "I am not the name/trust, that is not me."  (ECF No. 11 at PageID 217.)

pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). Conclusory allegations "are not entitled to the assumption of truth," and legal conclusions "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Although a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), Rule 8 nevertheless requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

"*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. Jan. 31, 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

Fields filed his complaint pursuant to 42 U.S.C. § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States (2) committed by a defendant acting under color of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970).

Fields asserts claims against various state prisons, officials of those prisons, private companies, and officials of those private companies. He sues each individual in their individual and official capacities. "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312, 105 L. Ed. 2d 45 (1989) (internal citation omitted). Similarly, an official-capacity suit against employees of an agency or company is in essence a suit against the company of which they are agents. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Thus, Fields's claims against the TDOC and his official capacity claims against TDOC employees must be treated as brought against the State of Tennessee. Fields's claims against the HCCF and the TTCC, and his official-capacity claims against HCCF and TTCC employees, will be treated as brought against CoreCivic.

Fields has no valid claim against the State of Tennessee. The Eleventh Amendment to the United States Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. The Eleventh Amendment has been construed to prohibit citizens from suing their own states in federal court. *Welch v. Tex. Dep't of Highways & Pub. Transp.*, 483 U.S. 468, 472 (1987); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *see also Va. Office for Protection & Advocacy v. Stewart*, 131 S. Ct. 1632, 1638 (2011) ("A State may waive its sovereign immunity at its pleasure, and in some circumstances Congress may abrogate it by appropriate legislation. But absent waiver or valid abrogation, federal courts may not entertain a private person's suit against a State." (citations omitted)). Tennessee has not waived

its sovereign immunity. *See* Tenn. Code Ann. § 20-13-102(a). Moreover, a state is not a person within the meaning of 42 U.S.C. § 1983. *Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 617 (2002); *Will*, 491 U.S. at 71.

The Supreme Court has clarified, however, that "a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Graham*, 473 U.S. at 167 n.14; *Ex Parte Young*, 209 U.S. 123, 159-160 (1908)); *see also Thiokol Corp. v. Dep't of Treasury, State of Mich., Revenue Div.*, 987 F.2d 376, 381 (6th Cir. 1993) ("[T]he [eleventh] amendment does not preclude actions against state officials sued in their official capacity for prospective injunctive or declaratory relief." (citing *Ex Parte Young*, 209 U.S. 123)).

To proceed with his official-capacity claims against TDOC officials for injunctive relief, Fields must allege that the State was responsible for the violation of his constitutional rights because of a practiced custom or policy. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). The Sixth Circuit has held that to establish the requisite causal link between constitutional violation and policy, a plaintiff must "identify the policy, connect the policy to the [entity] itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (citing *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987)). The custom or policy must be "the moving force" behind the deprivation of the plaintiff's rights. *Powers v. Hamilton Cnty. Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007) (citing *Monell*, 436 U.S. at 694).

The same applies to Fields's claims against CoreCivic and Trinity Food Services. "A private corporation that performs the traditional state function of operating a prison acts under

color of state law for purposes of § 1983." *Thomas v. Coble*, 55 F. App'x 748, 748 (6th Cir. 2003) (citing *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996)). The Sixth Circuit has applied the standards for assessing municipal liability to claims against private corporations that operate prisons or provide medical care or food services to prisoners. *Id.* at 748-49; *Street*, 102 F.3d at 817-18; *Johnson v. Corr. Corp. of Am.*, 26 F. App'x 386, 388 (6th Cir. 2001); *see also Eads v. State of Tenn.*, No. 1:18-cv-00042, 2018 WL 4283030, at *9 (M.D. Tenn. Sept. 7, 2018). To prevail on a § 1983 claim against either company, Plaintiff "must show that a policy or well-settled custom of the company was the 'moving force' behind the alleged deprivation" of his rights. *Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011).

Fields has not alleged that any policy or custom of the State of Tennessee, CoreCivic, or Trinity Food Service played a part or was the "moving force" behind the alleged violations of his constitutional rights. He instead alleges various misdeeds by individual officials at each facility. None of his allegations against the individuals are properly imputed to the State of Tennessee, CoreCivic, or Trinity Food Service without an official policy or custom linking them to the alleged violations by their officials. Fields therefore fails to state a claim against the State of Tennessee, CoreCivic or Trinity Food Service, or against any employees thereof in their official capacities.

Fields's complaint does not contain any allegations against Defendants Parker, Medlin, Russell, Ferguson, Brun, England, Schwitzer, Borden, Lanier, Ricketts, Wills, McKinnie, Daye, Anthony, Crowder, or Jones.[8] When a complaint fails to allege any action by a Defendant, it necessarily fails to "state a claim for relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

---

[8] Fields alleges that various Defendants "actively failed to provide proper Constitutional Treatment." (ECF No. 1 at PageID 27.) These general allegations are insufficient to state a claim against any Defendant. *See Twombly*, 550 U.S. at 570.

Fields alleges that he has been denied a diet in accordance with Jainism. This claim arises under the First Amendment, which provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. The First Amendment is applicable to the States through the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Although "[l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates "clearly retain protections afforded by the First Amendment," including the right to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (quotation omitted). To establish that this right has been violated, Plaintiff must establish that: (1) the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) the Defendant's behavior infringed upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224-25 (6th Cir. 1987); *see Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001).

Prisoners also have a right to meals that meet their nutritional needs without violating their sincerely-held religious beliefs. *See Robinson v. Jackson*, 615 F. App'x 310, 314 (6th Cir. 2015) (citing *Colvin v. Caruso*, 605 F.3d 282, 290 (6th Cir. 2010)). There is, however, "no constitutional right for each prisoner to be served the specific foods he desires . . . in prison." *Id.* (citing *Spies v. Voinovich*, 173 F.3d 398, 406-07 (6th Cir. 1999) (holding that providing a Buddhist prisoner with a vegetarian diet but not a vegan diet was constitutionally permissible, and "the fact that Plaintiffs dislike the alternate diet available does not render it unreasonable or legally deficient.").

Fields alleges that he requested a diet of raw fruits and vegetables, no beans, and no root vegetables, in accordance with Jainism principles and his allergy. Defendant Gore approved Fields's request for a diet in accordance with his religion; but Fields alleges he still is served foods that do not comport with his religion. (ECF No. 1 at PageID 16.) He does not allege which

Defendants have served him these foods or denied him his dietary request. However, Fields alleges that he told Defendant Perry about his bean allergy and need for an "adequate nutritious religious meal of JAINISM." (ECF No. 11 at PageID 216-217.) Perry allegedly declined to follow TDOC policies regarding Fields's diet and has implemented his own regulations that Fields alleges deprive him of a nutritionally adequate diet in accordance with Jainism. (*Id.* at PageID 217-218.) These allegations sufficiently state a First Amendment claim against Defendant Perry.

Fields also alleges that he has been denied a place to practice, worship, and study his religion. Outside of the allegations regarding his diet, however, Fields does not name any Defendant whose behavior infringed on his ability to practice his religion. Nor does he explain what actions were taken that infringed his rights. He states only generally that the "[p]arty defendants continue to deny me yoga mats and accessories and a place to practice, worship, and study the religion on Jainism." (ECF No. 1 at PageID 22.) This general allegation is insufficient to state a First Amendment claim against any individual Defendant. *See Twombly*, 550 U.S. at 570; *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) ("The court is not required to accept non-specific factual allegations and inferences or unwarranted legal conclusions.").

Fields alleges that he was placed in segregation for over 168 hours, or seven days, without personal hygiene items. He was released on the eighth day only after his mother called TDOC headquarters. The Court construes Fields's allegations as a claim that he was denied due process. A Fourteenth Amendment procedural due process claim depends upon the existence of a constitutionally cognizable liberty or property interest with which the state has interfered. *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989); *Pusey v. City of Youngstown*, 11 F.3d 652, 656 (6th Cir. 1993). A prison restriction does not give rise to a protected liberty interest unless the restriction imposed constitutes an "atypical and significant hardship on the inmate in

relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Confinement to administrative or punitive segregation, the loss of package privileges, fines, and restitution generally do not constitute atypical and significant hardships in the context of prison life. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).

Fields alleges that he was in segregation for seven or eight days. Courts have held that placement in segregation for significantly longer periods does not constitute "an atypical and significant hardship." *See, e.g., Dunbar v. Barone*, 487 F. App'x 721, 724-25 (3d Cir. 2012) (eighteen months); *Bradley v. Evans*, 229 F.3d 1150, 2000 WL 1277229, at *5-7 (6th Cir. Aug. 23, 2000) (fourteen months); *Albiola v. Pugh*, No. 4:14CV1645, 2015 WL 1915289, at *6 (N.D. Ohio Apr. 27, 2015) (one hundred thirty-seven days). Moreover, Fields does not allege that he was harmed by the conditions in the segregation unit.

To the extent Fields alleges that his lack of personal hygiene items violated his rights, he fails to state a claim. The Sixth Circuit "has concluded that deprivation of a shower and other personal hygiene items for a 'brief span of time . . ., i.e., only six days' is not actionable conduct." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (quoting *Siller v. Dean*, 205 F.3d 1341 (6th Cir. Feb. 1, 2000) (unpublished decision)); *see Argue v. Hofmeyer*, 80 F. App'x 427, 429-30 (6th Cir. 2003) (citing *Sandin*, 515 U.S. at 484-86, and *Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002) (inmate who failed to allege "extreme discomfort" or complete denial of "basic elements of hygiene" did not state Eighth Amendment claim)).

Fields alleges that Defendant Siggers refused to provide him copies of unspecified legal documents. Separately, Fields alleges that Defendant Mathews refused to provide him copies of the summons and complaint in his case before the Davidson County Chancery Court, which then dismissed Fields's action against various prisons for failure to comply with court orders. He asserts

that Mathews's actions denied him "preparation to access to the courts." (ECF No. 1 at PageID 22.)

Prisoners retain a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821–22 (1977) (citing *Ex Parte Hull*, 312 U.S. 546 (1941)). That right "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). "In order to state a claim for interference with access to the courts, however, a plaintiff must show actual injury." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Id.*

Fields does not state a claim against Defendant Siggers. He fails to allege what documents were not copied or that he suffered any injury without the copies. With respect to his claim against Defendant Mathews, however, Fields alleges that the dismissed action was a "Writ of Declaratory Judgment against Defendants at NECX, T.T.C.C., TDOC., S.C.C.F., CCA, CORE CIVIC, and H.C.C.F." (ECF No. 1 at PageID 17.) He alleges that he suffered actual injury because his complaint was dismissed for failing to comply with court orders to provide copies of the summons and complaint. These allegations suffice to state a First Amendment claim against Defendant Mathews.

Fields alleges that Defendant Robertson deprived him of his property while he was in custody. Claims for deprivation of property, however, are not actionable under § 1983 if adequate state remedies are available to redress the deprivation. *See, e.g.*, *Parratt v. Taylor*, 451 U.S. 527 (1981), *partially overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330-31 (1986); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985). This is true even if the property is taken

intentionally. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984). "[T]he State of Tennessee does provide an adequate post-deprivation remedy for takings of property." *McMillan v. Fielding,* 136 F. App'x 818, 820 (6th Cir. 2005) (citing *Brooks v. Dutton,* 751 F.2d 197, 199 (6th Cir. 1985)). Fields therefore may not seek reprieve in this § 1983 action for the alleged deprivation of his property.

Fields asserts that various Defendants denied or refused to process his grievances. "There is no inherent constitutional right to an effective prison grievance procedure." *See LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Nor is there a "constitutionally protected due process right to unfettered access to prison grievance procedures." *Walker v. Michigan Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). A § 1983 claim therefore cannot be premised on contentions that the grievance procedure was inadequate. *LaFlame*, 3 F. App'x at 348.

Similarly, Fields alleges that Defendant Garner violated TDOC grievance policy in refusing him his property. "A state has no federal due process obligation to follow all of its grievance procedures." *Carlton v. Jondreau*, 76 F. App'x 642, 644 (6th Cir. 2003) (citing *Levine v. Torvik*, 986 F.2d 1506, 1515 (6th Cir. 1993)). Section 1983 therefore does not provide a remedy for violation of state laws or regulations. *Lewellen v. Metro. Gov't of Nashville and Davidson Cnty.*, 34 F.3d 345, 347 (6th Cir. 1994) ("Unless a deprivation of some federal constitutional or statutory right has occurred, § 1983 provides no redress even if the plaintiff's common law rights have been violated and even if the remedies available under state law are inadequate.").

Fields also alleges that Defendant Dietz refused to treat his medical issues or reevaluate his hernia and "discontinued" surgery for his hernia. He further alleges Dietz refused to provide him with a therapeutic diet. The Court reviews claims regarding the denial of medical care under the

Eighth Amendment, which prohibits cruel and unusual punishments. *See generally Wilson v. Seiter*, 501 U.S. 294, 297 (1991). Under *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain'" . . . proscribed by the Eighth Amendment." However, not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Id.* at 105. To state a cognizable claim, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* at 106.

An Eighth Amendment claim consists of both objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Hudson v. McMillian*, 503 U.S. 1, 8 (1992); *Wilson*, 501 U.S. at 298. The objective component of an Eighth Amendment claim based on a lack of medical care requires that a prisoner have a serious medical need. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 895 (6th Cir. 2004); *Brooks v. Celeste*, 39 F.3d 125, 128 (6th Cir. 1994). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore*, 390 F.3d at 897; *see also Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005).

To establish the subjective component of an Eighth Amendment violation, a prisoner must demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834; *see also Wilson*, 501 U.S. at 302-03. The plaintiff must show that the prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm. *Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at

303; *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009); *Woods v. Lecureux*, 110 F.3d 1215,1222 (6th Cir. 1997). "[D]eliberate indifference describes a state of mind more blameworthy than negligence." *Farmer*, 511 U.S. at 835. A prison official cannot be found liable under the Eighth Amendment unless he subjectively knows of an excessive risk of harm to an inmate's health or safety and disregards that risk. *Id.* at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not" does not amount to cruel and unusual punishment. *Id.* at 838.

Fields does not describe his hernia or elaborate on his condition. Hernias vary in severity, with certain "strangulated" hernias creating "a medical and surgical emergency," while other "non-strangulated" hernias are treatable without surgery. *See Birdsong v. Bishop*, No. CIV A 06-CV-297-JMH, 2008 WL 5135325, at *13-14 & n.8 (E.D. Ky. Nov. 26, 2008) (discussing both types of hernias). Fields, however, alleges that he is in severe pain and believes the hernia could rupture, though he does not allege facts to bolster that concern. He also alleges Dietz discontinued planned hernia surgery, which presupposes surgery previously was scheduled and suggests the hernia could be strangulated. Taking his allegations as true, Fields's untreated hernia constitutes an objectively serious medical need.

Fields also alleges that Dietz subjectively knew of Fields's hernia, because he cancelled the planned surgery and told Fields "face to face" that he "will not provide me with any treatment." (ECF No. 1 at PageID 15.) These allegations show Dietz knew of and disregarded Fields's medical condition and therefore satisfy the subjective component. The Eighth Amendment claim against Defendant Dietz regarding the alleged failure to treat Fields's hernia will be allowed to proceed.

Fields, however, does not state a claim against Defendant Dietz regarding his diet. It is unclear whether Fields is alleging he told Defendant Dietz about an actual therapeutic diet order that had been issued previously by someone else or whether he is alleging that Dietz denied Fields's initial request for a therapeutic diet that would take into account his allergy to beans and an alleged need for vitamin and mineral supplements. (ECF No. 1 at PageID 14-15.) Fields also does not allege how the therapeutic diet he requested from Dietz differed from the religious diet he sought and which he alleges had been approved by Defendant Gore though not actually provided. Fields does allege that Dietz refused him a B-12 injection, but he does not allege that he had an objectively serious medical need for that injection or that he had no other available option to make up the alleged nutritional deficit.

Fields alleges that Defendant Williams denied Fields's demand for an attorney phone call on one occasion. Inmates have a right of meaningful access to their counsel, but that right "does not require prison officials to provide that access by any particular means, such as the unlimited use of telephones." *Cesal v. Bureau of Prisons*, No. CIVA 04CV281 DLB, 2006 WL 2803057, at *5 (E.D. Ky. Sept. 28, 2006) (citing *Aswegan v. Henry*, 981 F.2d 313, 314 (8th Cir. 1992)); *cf. Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994) ("[A]n inmate has no right to unlimited telephone use." (quotation omitted)). Fields does not challenge a prison policy regarding telephone use or allege that Williams completely prohibited Fields from calling his attorney. His allegation that he was denied a phone call to his attorney on a single occasion, without more, does not rise to the level of a constitutional violation.

Fields alleges that unspecified Defendants have retaliated against him for "exercise of our constitutional rights." (ECF No. 1 at PageID 27.) The Court reviews retaliation claims under the First Amendment. *See Harbin-Bey*, 420 F.3d at 579 ("Retaliation on the basis of a prisoner's

exercise of his First Amendment rights violates the Constitution."). A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391. "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Fields's claim fails at the first element. He does not specify his protected conduct but instead generally alleges he was exercising his constitutional rights. In his supplemental complaint, Fields alleges that Defendant Hill informed him he was being moved to the compound of the facility after he refused to sign his given name on protective custody forms. Fields's refusal to sign the forms does not constitute protected conduct. *See Eads v. Tennessee*, No. 1:18-CV-00042, 2018 WL 4283030, at *10 (M.D. Tenn. Sept. 7, 2018) (citing *Bell v. Artuz*, No. 98 CIV.4710(MBM), 1999 WL 253607, at *6 (S.D.N.Y. Apr. 29, 1999)) (inmate's refusal to sign a form waiving protective custody, under threat of transfer, was not protected conduct). Moreover, he does not allege that Hill ordered or caused his transfer; he alleges only that Hill *told him* that he was being moved to the compound. Nor does Fields allege that any other Defendant or Defendants took an adverse action against him or suggest anything from which the Court could infer a causal

connection.  His conclusory allegation of retaliation does not state a claim.  *See Iqbal*, 556 U.S. at 679.

Fields alleges that Defendants M.T. and Patterson refused to allow him to call witnesses or to cross-examine witnesses at his request during a disciplinary hearing.  He alleges he was found guilty of refusing to participate in an inmate-led program but does not allege what, if any, punishment he received.  (ECF No. 1 at PageID 27.)  Prison disciplinary hearings trigger due process rights when they may result in the forfeiture of good time credits.  *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974).  In that case, the prisoner is entitled to advance written notice of the charges, the opportunity to "call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals," and "a written statement of . . . the evidence relied upon and the reasons for the disciplinary action taken.  *Id.* at 563-66.  Fields, however, does not allege that he was at risk of losing good time credits as a result of the hearing and therefore was not entitled to any due process protections.  *See Vick v. Core Civic*, 329 F. Supp. 3d 426, 455 (M.D. Tenn. 2018) (citing *Sandin*, 515 U.S. at 484, 486-87).  He therefore does not state a due process claim related to his disciplinary hearing.

Fields generally asserts that the Defendants are aware of the alleged misconduct of their subordinates but "they are doing nothing."  Under § 1983, however, "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."  *Iqbal*, 556 U.S. at 676; *see also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.

> There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it.  At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized,

approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinates.

*Bellamy*, 729 F.2d at 421 (citation omitted). A supervisory official who is aware of the unconstitutional conduct of his subordinates but fails to act generally cannot be held liable in his individual capacity. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Gregory v. City of Louisville*, 444 F.3d 725, 751 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Lillard v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996). Furthermore, a failure to take corrective action in response to an inmate grievance or complaint does not supply the necessary personal involvement for § 1983 liability. *See Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003); *George v. Smith*, 507 F.3d 605, 609-10 (7th Cir. 2007) ("Ruling against a prisoner on an administrative complaint does not cause or contribute to the [constitutional] violation.").

Fields does not allege that any specific supervisory Defendant authorized, approved, or knowingly acquiesced in the misconduct of any subordinate Defendant. Nor does Fields specify which supervisors should be responsible or for whose conduct they must be held liable. He alleges in conclusory terms that every supervisor was aware of the actions of every subordinate and has done nothing to correct it. These broad allegations are insufficient to hold any supervisory Defendant liable for the conduct of a subordinate.

Fields generally alleges that various Defendants have conspired against him to deny him various rights. A plaintiff may plead a conspiracy claim under § 1983, but he must do so with specificity. *Farhat v. Jopke*, 370 F.3d 580, 599 (6th Cir. 2004). "[V]ague and conclusory allegations that are unsupported by material facts are not sufficient to state a § 1983 claim." *Id.* (citing *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987)). This pleading standard for a claim of civil conspiracy is "relatively strict." *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008).

Fields's claim fails this standard. He broadly alleges a conspiracy without any material factual support suggesting any Defendant conspired with another to deny his rights.

Because Fields is no longer at HCCF or TTCC, his request for declaratory and injunctive relief against prison officials there is moot. *Moore v. Curtis*, 68 F. App'x 561, 562 (6th Cir. 2003) (claims for declaratory and injunctive relief against prison staff moot when inmate transferred to another facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (same); *Tramber v. Pleasant*, No. 4:12CV-P31-M, 2012 WL 4594339, at *5 (W.D. Ky. Oct. 2, 2012) (inmate's claim for a transfer and medical care moot when he was transferred to another facility).

Fields also seeks relief under RLUIPA. Under RLUIPA, a claimant may "assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." 42 U.S.C § 2000cc-2(a). An inmate's right to "appropriate relief" under RLUIPA, however, does not encompass monetary damages. *See Pleasant-Bey v. Luttrell*, No. 2:11CV-02138-TLP-TMP, 2018 WL 4291935, at *4 & n.4 (W.D. Tenn. Sept. 7, 2018) (quoting *Haight v. Thompson*, 763 F.3d 554, 568-70 (6th Cir. 2014)). As noted above, Fields's requests for declaratory and injunctive relief are moot. He therefore would be able to receive only monetary damages at this stage of the action. *Id.* However, Fields is not eligible for monetary damages under RLUIPA, so his RLUIPA claims also must be dismissed.

In conclusion, with the exception of the claims listed below, the Court DISMISSES Fields's complaint for failure to state a claim on which relief can be granted and for seeking relief against a Defendant immune from such relief, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)-(iii) and 1915A(b)(1)-(2). The Court will allow Fields's First Amendment claim against Defendant Perry, First Amendment claim against Defendant Mathews, and Eighth Amendment claim against Defendant Dietz concerning the alleged failure to treat Fields's hernia to proceed.

It is ORDERED that the Clerk shall issue process for Defendants Perry, Mathews, and Dietz and deliver that process to the U.S. Marshal for service. Service shall be made on Defendants Perry, Mathews, and Dietz pursuant to Federal Rule of Civil Procedure 4(e) and Tennessee Rules of Civil Procedure 4.04(1) and (10) by registered or certified mail or personally if mail service is not effective. All costs of service shall by advanced by the United States.

It is further ORDERED that Fields shall serve a copy of every subsequent document he files in this cause on the attorneys for Defendants Perry, Mathews, and Dietz. Fields shall make a certificate of service on every document filed. Fields shall familiarize himself with Federal Rules of Civil Procedure and this Court's Local Rules.[9]

Fields is reminded that he must promptly notify the Clerk of any change of address or extended absence. Failure to comply with these requirements, or any other order of the Court, may result in the dismissal of this case without further notice.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE

---

[9] A copy of the Local Rules may be obtained from the Clerk or on the Court's website at https://www.tnwd.uscourts.gov/pdf/content/LocalRules.pdf.